IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

WORLD CLASS TECHNOLOGY
CORPORATION, an Oregon corporation,

                Plaintiff,

    v.

ORMCO CORPORATION, a Delaware
corporation,

                Defendant.

_____

Civ. No. 3:13-cv-00401-AC

OPINION AND
ORDER

ACOSTA, Magistrate Judge:

*Introduction*

Presently before the court is the issue of claim construction of the language of United States Patent No. 8,393,896 ("the '896 Patent"). The '896 Patent is the latest in a series of patents that involve self-ligating orthodontic bracket technology. Self-ligating brackets differ from traditional

OPINION AND ORDER                    1

brackets in that they permit attachment of the wire, known as the archwire, and the bracket without the use of traditional ligatures, such as rubber bands or additional wires. Instead, the self-ligating bracket features a slot with a sliding cover that permits an orthodontist to place the archwire in the slot and to secure it in the slot by sliding the cover into the closed position. The '896 Patent discloses an one such self-ligating bracket.

*Background*

Plaintiff World Class Technology Corporation ("WCT") seeks declaratory judgment of noninfringement of five patents owned by Defendant Ormco Corporation ("Ormco"). Ormco asserts a counterclaim of infringement of its U.S. Patent No. 8,393,896 ("the '896 Patent"), a sixth patent now the subject of this litigation.

Ormco asserts that WCT's H4 bracket infringes claims 1, 2, 5, 7, 10, 14, and 15 of the '896 Patent. Claim 1 is an independent claim upon which claims 2-9 depend. Claim 10 is an independent claim upon which claims 11-16 depend. The parties now request that the court construe the meaning of two terms - "support surface" and "ledge."

*Legal Standard*

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The analysis of a patent infringement action involves two steps: (1) the proper construction of the asserted claim; and (2) a determination of whether the accused method or product infringes the claims as properly construed. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd* 517 U.S. 370 (1996). "To ascertain the scope and

meaning of the asserted claims, we look to the words of the claims themselves, the specification, the prosecution history, and any relevant extrinsic evidence." *Retractable Techs., Inc. v. Becton, Dickinson and Co.*, 653 F.3d 1296, (Fed. Cir. 2011) (citing *Phillips,* 415 F.3d at 1315-1317).

In construing claim language, the words of a claim "are generally given their ordinary and customary meaning[.]" *Vitronics Corp. v. Conceptronics, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application. *Phillips*, 415 F.3d at 1313. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

The court looks at the words of the claims themselves, both asserted and unasserted. *Id.* "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id*. For example, the Federal Circuit has consistently held that interpreting a claim term in a manner that renders subsequent claim language superfluous is improper. *See Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1362 (Fed. Cir. 2007) (holding that a definition that renders claim language superfluous is "a methodology of claim construction that this court has denounced"); *see also Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so."). Similarly, the doctrine of claim differentiation recites the principle that the limitations in each claim are presumed to be distinct from one another. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) (holding that the presence of a dependent claim that adds a particular limitation

OPINION AND ORDER                3

gives rise to a presumption that the limitation in question is not present in the independent claim).

However, the claims "do not stand alone[,]" *Phillips*, 415 F.3d at 1315, and "must be read in view of the specification, of which they are a part." *Markman*, 52 F.3d at 978. Accordingly, the specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582. The specification is especially important because "a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history." *Id.* As such, "it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning. The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Id.*

Although the specification is relevant to claim construction, limitations found only in the specification are not to be read into the claims if the claim language is broader than the specification. *See Electro Med. Sys., S.A. v. Cooper Life Sci.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994) ("although the specifications may well indicate that certain embodiments are preferred, particular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments"); *see also Teleflex, Inc. v. Ficosa N.A. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002) (refusing to import a limitation found in the specification even when the specification disclosed only one embodiment).

In addition to the specification, the court should consult the prosecution history of the patent, if in evidence. *Phillips*, 415 F.3d at 1317. Although typically less helpful than the specification, the prosecution history may demonstrate how the inventor understood the invention and whether the

inventor limited the scope of the invention during prosecution to avoid reading on prior art. *Id.* "Under the doctrine of prosecution disclaimer, a patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution." *Purdue Pharma L.P. v. Endo Pharma. Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006). "A patentee could do so, for example, by clearly characterizing the invention in a way to try to overcome rejections based on prior art." *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008). However, "[p]rosecution disclaimer does not apply to an ambiguous disavowal." *Id.* at 1375.

Finally, if the ordinary and customary meaning of a claim term is not apparent from the intrinsic evidence, courts are authorized to consult extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980.

*Discussion*

I.   Claim Language

For convenience, the court sets for the language of the independent claims in their entirety.

Claim 1 of the '896 Patent reads:

> A self-ligating orthodontic bracket for coupling an archwire with a tooth, comprising:
> a bracket body configured to be mounted to the tooth, the bracket body including *a support surface*, a ledge, and an archwire slot including a base surface and opposing first and second slot surfaces extending from the base surface, the base surface being interposed between the opposing first and second surfaces, *the support surface being acutely angled with respect to the base surface, and the ledge opposing the support surface across the archwire slot and including a surface that is generally parallel to the base surface*; and
> a movable member coupled with the bracket body and movable between an opened position in which the archwire is insertable into the archwire slot and a closed position in which the movable member retains the archwire in the archwire slot,
> wherein the movable member comprises a first portion and a second portion

extending at an acute angle from the first portion, *the first portion engaging the acutely angled support surface of the bracket body when the movable member is in the closed position*, the second portion being generally parallel to the base surface and extending across the archwire slot from the first slot surface to the second slot surface when the movable member is in the closed position.

('896 Patent 10:28-53 (emphasis added).)

Claim 10 of the '896 Patent reads:

A self-ligating orthodontic bracket for coupling an archwire with a tooth, comprising:
a bracket body configured to be mounted to the tooth, the bracket body including an archwire slot including a base surface and opposing first and second slot surfaces extending from the base surface, the base surface being interposed between the opposing first and second slot surfaces, a support surface being acutely angled with respect to the base surface, and a ledge opposing the support surface across the archwire slot and including a surface that is generally parallel fo the base surface; and
a movable member coupled with the bracket body and slidable from a closed position in which the movable member retains the archwire in the archwire slot toward an opened position in which the archwire is insertable into the archwire slot, the movable member comprising a first portion and a second portion extending at an acute angle from the first portion,
wherein the first portion engages the support surface in the closed position and the second portion is generally parallel to the base surface during sliding movement of the movable member from the closed position toward the opened position.

('896 Patent 11:21-43.)

The parties dispute the proper construction of "support surface" and "ledge."

*A.     Support Surface*

As the Federal Circuit directs, the court must first consider the words of the claims themselves. Ormco argues that the claim terms should be given their plain and ordinary meaning and, as such, the phrase "support surface" should be construed as "support surface," or "a surface

that supports."[1]  Ormco objects to WCT's proposed construction for two primary reasons.  First, it contends that there is no support in the claim language for the requirement that the support surface guides the movable member between the open and closed positions and, therefore, this limitation is inappropriately imported from the specification.  Second, Ormco argues that principles of claim differentiation demonstrate that WCT's construction is incorrect.

      WCT argues that the language of Claim 1 limits the meaning of "support surface" to a surface that is acutely angled with respect to the base surface of the archwire slot that also engages the slide, or "movable member," when it is in the closed position.  WCT proposes the following construction: "a surface on the bracket body which at least partially supports and guides the movable member during movement between the open position and the closed position."  WCT first cites the claim language, and argues that the claim language itself limits the meaning of "support surface" to a surface that is acutely angled to the base surface, lies across the archwire slot, and engages the first portion of the ligating slide, or movable member.

      WCT also references unasserted claims and the "Summary of the Invention" in support of its construction of support surface.  Specifically, WCT argues that a person of ordinary skill in the art, having read Claims 3, 4, 6, and 10, would conclude that the support surface is analogous to the translation plane and, by extension, is also defined by the slide engagement track.  WCT also refers to Claims 23 and 26 as evidence that the support surface and the movable member are in contact as the it moves between the open and closed positions.

      Claim 1 describes a bracket with an archwire slot, this slot having a base surface and two

---

[1] Ormco considers these constructions interchangeable.  *See* Ormco Opening Brief (#61) at n.3.

OPINION AND ORDER                            7

opposing surfaces such that the opposing surfaces extend out from the base surface. ('869 Patent 10:31-34.) The bracket also contains a support surface that is "acutely angled with respect to the base surface[.]" ('896 Patent 10:35-37.) The slide, or movable member, "engag[es] the acutely angled support surface" when the bracket is closed. *Id*. at 10:45-49. Claim 10 similarly refers to a bracket with an archwire slot, a base surface, two opposing surfaces, and "a support surface being acutely angled with respect to the base surface[.]"[2] ('896 Patent 11:28-29.) The first portion of a movable member, the movable member having two portions, engages with the support surface in the closed position. ('896 Patent 11:39-40.) This first portion extends at an acute angle from the second portion, which itself is generally parallel to the base surface. Thus, the claim language alone makes clear that the critical characteristic of the support surface is that it is acutely angled.

  B. *Ledge*

Again, Ormco argues that the claim term "ledge" requires no construction and should be given its plain and ordinary meaning. WCT offers the following proposed construction for "ledge": "An area on the bracket body which contacts the movable member only when the movable member is in the closed position." The parties agree that the meaning of ledge depends on the meaning of support surface.

Ormco argues that WCT's construction imports limitations from the specification, namely that the ledge make contact with the movable member only when the movable member is in the closed position. Rather, the claim language provides only that the ledge is a component of the bracket body and is located opposite the archwire slot from the support surface. Ormco points out

---

  [2]The claim language also refers to "the support surface" rather than "a support surface," thus limiting the device to a single support surface.

that the language of Claim 2, which does limit the ledge to a portion of the bracket that is in contact with the movable member only in the closed position. Thus, it contends, Claim 2 raises the presumption that language of Claim 1 contains no such limitation.

WCT argues that the ledge is defined by its orientation to the support surface in that it is across from the archwire slot, and the ledge is generally parallel to the base surface. WCT also refers to Claim 2, which provides that the ledge and the movable member "cooperate" when the movable member is in the closed position. And, in Claim 7, the movable member abuts the ledge when in the closed position. WCT also refers to unasserted Claims 8 and 9 and their requirement that the ledge extend past the movable member and act to receive the movable member as it moves into the closed position.

As the parties themselves argue, the construction of "ledge" is dependent on the construction given to "support surface." If the court accepts Ormco's construction of "support surface" the ledge is merely any component of the bracket body located opposite the archwire slot from the support surface. If the court accepts WCT's construction, the fact that the ledge is defined by virtue of its location relative to the support surface will further limit its meaning.

II.     The Specification

The court next considers the construction of "support surface" and "ledge" in light of the specification. "In reviewing the intrinsic record to construe the claims, we strive to capture the scope of the actual invention, rather than strictly limit the scope of claims to disclosed embodiments or allow the claim language to become divorced from what the specification conveys is the invention." *Retractable Techs.*, 653 F.3d 1305. The specification may resolve ambiguities present in the bare language of the claim. For example, in *Retractable Technologies*, the court had to determine

OPINION AND ORDER                              9

whether the term "body" in the claim language was limited to a single-piece body, or could encompass a two-piece structure. The court evaluated both the claim language and the specification and concluded that the claimed device was limited to a single-piece structure: "In this case, while the claims leave open the possibility that the recited 'body' may encompass a syringe body composed of more than one piece, the specifications tell us otherwise." *Id*.

In *Gentry Gallery Inc. v. The Berkline Corp.*, 134 F.3d 1473 (Fed. Cir. 1998) ("*Gentry Gallery*"), the court reviewed a district court's claim construction. The device in question was a seating unit comprised of two reclining seats attached to and separated by a console, with the recliner controls located on the center console. The alleged infringer, Berkline, argued that the claim language did not encompass devices where the recliner controls were located somewhere other than the center console, because the patent only described such units with controls on the center console. The patentee, Gentry, argued that the unit with the controls on the center console was merely the preferred embodiment of the device, but that the claim language supported devices with the controls located elsewhere.

Gentry, the patentee, cited *Ethicon Endo-Surgery, Inc. v. United States Surgical Corp*., 93 F.3d 1572 (Fed. Cir. 1993), for its proposition that an applicant is allowed claims beyond the scope of its preferred embodiment, so long as they remain within the bounds of the prior art. The court distinguished *Ethicon*, however, on the basis that, there, the "applicant 'was free to draft claims broadly (within the limits imposed by the prior art) to exclude the lockout's exact location as a limitation of the claimed invention' only because he 'did not consider the precise location of the lockout to be an element of his invention.'" *Gentry Gallery*, at 1479 (quoting *Ethicon*, 93 F.3d at 1582 n.7). In contrast, in the case before it, the inventor "considered the location of the recliner

OPINION AND ORDER                 10

controls on the console to be an essential element of his invention." *Gentry Gallery*, at 1479. In a similar vein, the court noted that "'an applicant is entitled to claims as broad as the prior art *and his disclosure* will allow.'" *Id*. at 1480 (quoting *In re Rasmussen,* 650 F.2d 1212, 1214 (C.C.P.A.[3] 1981) (emphasis in original)).

The court agreed that the patent's disclosure[4] did not "support claims in which the location of the recliner controls [was] other than on the console." *Gentry Gallery*, 134 F.3d at 1479. It acknowledged that "[i]t is a truism that a claim need not be limited to a preferred embodiment. However, in a given case, the scope of the right to exclude may be limited by a narrow disclosure." *Id*. In its view, the disclosure of the patented device contemplated "only the most minor variation in the location of the controls" and none outside of the console itself. *Id*. Additionally, the disclosure was explicit that the sole purpose of the console was to act as the location of the recliner controls. *Id*. As such, the court concluded that "locating the controls anywhere but on the console is outside the stated purpose of the invention." *Id*. The *Gentry* court concluded its discussion as follows:

> In sum, the cases on which Gentry relies do not stand for the proposition that an applicant can broaden his claims to the extent that they are effectively bounded only by the prior art. Rather, they make clear that claims may be no broader than the supporting disclosure, and therefore that a narrow disclosure will limit claim breadth.

*Id*. at 1480.

---

[3] The United States Court of Customs and Patent Appeals, or "CCPA," was a predecessor court to the Federal Circuit Court of Appeals. *Haggar Apparel Co. v. United States*, 222 F.3d 1337, 1339 (Fed. Cir. 2000).

[4] The disclosure refers to "everything revealed about an invention in the patent application, including drawings, descriptions, specifications, references to prior art, and claims." *Black's Law Dictionary* 532 (9th ed. 2009).

OPINION AND ORDER                                11

Both parties rely on *Phillips* to describe the importance of the specification in claim construction. In *Phillips*, the Federal Circuit discussed the role of the claim language and the disclosure as a whole in the process of claim construction. As an initial observation, the court wrote: "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." 415 F.3d at 1313. The *Phillips* court stressed the importance of the specification in informing claim construction. In particular, "the specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). The specification assists the court in determining the "meaning" of the patent:

> "Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction."

*Id*. at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

The *Phillips* court issued a caution as well, noting that although the specification is useful in construing ambiguous claims, it should not be used to justify reading limitations from the specification into the claim language. *See* 415 F.3d at 1323 ("Moreover, we recognize that the distinction between using the specification to interpret the meaning of claim and imposing limitations from the specification into the claim can be a difficult one to apply in practice."). This practice was deemed particularly risky where the patent contains a single embodiment, and the

OPINION AND ORDER                12

Federal Circuit has "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Id*. In *Phillips*, the Federal Circuit urged district courts construing claim language to "keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide the best mode for doing so. . . . The manner in which the patentee uses a term within the specification and claim usually will make the distinction apparent." *Id*.[5]

   A.   *Support Surface*

In Ormco's construction, a "support surface" may be any "surface that supports" the slide, or movable member, in the closed position that is also acutely angled to the base surface of the archwire slot. Ormco gives no guidance as to what constitutes support of the movable member, but presumably this refers to a surface that is in contact with the movable member when the bracket is in the closed position. Although Ormco acknowledges that the rest of the disclosure has relevance, it urges the court to focus its evaluation almost exclusively on the claim language. However, beyond arguing that a court may not import limitations from the specification into its construction of the claim language, Ormco is unable to substantiate its position with relevant case law. Rather, the cases cited by both parties are clear on this general point: the specification "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics*, 90 F.3d at 1582.

---

[5] As Ormco pointed out at hearing, the *Phillips* court ultimately sided with the patentee although the patentee's proposed construction was broader than the embodiments expressed in the specification, all of which showed a particular element of the device at an acute angle to the primary vertical orientation, whereas the invention claimed by the patentee included such element at right angle to the primary vertical orientation. Thus, although the specification was consulted to reach the appropriate construction of the element in question, the embodiments therein were not permitted to limit the claim language beyond its plain meaning.

OPINION AND ORDER                           13

WCT argues that having opted to use "support surface" rather than simply "surface," the inventor acted as his own lexicographer. Therefore, the meaning of support surface cannot be determined from viewing the claim language in isolation, and the court must turn to the specification. WCT cites the specification in support of its construction of "support surface." The specification identifies several deficiencies of the existing self-ligating orthodontic brackets, one of which is the tendency for the ligating slide to make contact with the gum tissue while in the open position. As such, the bracket described in the '896 Patent was designed with the aim that the slide would open and close on a "slide engagement track" that is angled such that the bracket opens away from the gum tissue. The relationship between the translation plane for the ligating slide and the base plane of the archwire slot, thus, gives meaning to the "acutely angled" limitation in the claim language.

After reviewing the patent in its entirety, including the claim language and the rest of the disclosure, the court observes the following. In the "Abstract" section of the patent, the inventor emphasized the angle of the movable member and how this enabled the bracket to avoid contact with the gum tissue while in the open position. The first sentence describes a bracket with a slide that moves along a translation plane, and the second sentence states only that the plane is "angled with respect to the base plane." ('896 Patent at 1.) The third sentence describes the slide as running parallel to the translation plane. In conclusion, the abstract states: "The translation plane is angled with respect to the base plane so as to prevent the ligating slide from contacting the gingiva surrounding the tooth when the ligating slide is moved to the open position." ('896 Patent at 1.)

In the "Background of the Invention" section of the patent, the inventor identifies three problems that the invention solves, each of which are unique to placing brackets on molars. These difficulties arise because of the position and location of the molars in the mouth and their

comparatively smaller size.  ('896 Patent at 2.)

The "Summary of the Invention" section of the patent repeatedly emphasizes the bracket's angled slide which avoids the gum tissue while in the open position.  It describes several aspects of the invention, the first being the translation plane acutely angled to the base plane "to prevent the ligating slide from contacting the gingiva surrounding the tooth when the ligating slide is moved to the opened position." ('896 Patent 2:42-25.)  The summary next describes the relationship between the first and second portions of the slide which are designed to hold the archwire securely in the archwire slot by producing a "close fit."  ('896 Patent 2:45-52.)  The bracket surface is also designed to avoid occlusion with teeth on the opposite jaw and includes a "planar surface" that may be gripped with an orthodontic tool for purposes of applying the bracket to the tooth.  ('896 Patent 2:53-63.)  The bracket is also designed to prevent the slide from disengaging from the bracket body.  ('896 Patent 2:64-3:10.)

Importantly, the phrase "support surface" is used exclusively to reference the portion of the bracket upon which the ligating slide moves and rests, i.e., the translation plane.  The phrase "support surface" is not used in conjunction with any other part of the bracket.  For example, the specification refers to the translation plane and its angled relationship to the base plane, in order to avoid contact between the ligating slide and the gum tissue.  With respect to the angle used in a preferred embodiment, the specification reads:  "To prevent the ligating slide from contacting the gingiva, the base plane and translation plane have an angle . . . preferably approximately 20 degrees.  The invention, however, is not so limited and, as recognized by those of ordinary skill in the art, other angles suitable for a particular application are possible."  ('896 Patent 5:65-6:23.)

The specification also describes the locking mechanism used to secure the ligating slide in

the closed position in the bracket. It reads: "A resilient engagement member operates to secure the ligating slide in the closed position. The resilient engagement member is generally L-shaped and includes a lingually-extending prong that is received in a recess formed in support surface." ('896 Patent 6:41-45.) The reference number identifies the support surface as the same surface described throughout the patent, namely the surface upon which the ligating slide moves and rests. This language reinforces the distinction between the support surface of the bracket, which is angled to prevent an open slide from contacting the gum tissue, and the portion of the slide that locks the slide in the closed position. The recess in which the locking mechanism engages is a recess in the support surface, and not the support surface itself. This directly refutes Ormco's argument that "support surface" refers to *any* bracket surface that "supports" because the recess in which the locking prong rests is something different than the support surface, i.e., the surface upon which the ligating slide moves and rests.

The mechanism regulating the movement of the slide is also addressed in the specification, and this mechanism is made up of a projecting and a receiving portion such that a "retaining pin" is inserted into a "slot." ('896 Patent 7:39-56.) "The retaining pin/slot configuration prevents accidental or unintentional detachment of the ligating slide from the bracket body during use when the ligating slide is positioned in the opened position. It should be realized that the retaining pin/slot configuration does not lock the ligating slide in any position . . . but regulates" its movement. ('896 Patent 7:56-63.) Again, no reference is made to the "support surface" or an acute angle.

The patent, viewed in the context of the specification, describes a device with several aspects and potential embodiments. It does not, however, describe a bracket that is merely characterized by a surface on the bracket, in contact with the ligating slide, that is at an acute angle to the base of the

archwire slot. The invention in question is directed primarily at the problem of contact between the ligating slide and the patient's gum tissue. Ormco's proposed construction does not capture the meaning of the patent and is both internally inconsistent with the claim language and contrary to the patent's disclosure as a whole. With respect to "support surface," then, the claim language and the specification do not support the narrow construction urged by Ormco.

The court hereby adopts the construction of "support surface" proposed by WCT.

*B.     Ledge*

Having adopted WCT's construction of "support surface," it now considers the proper construction of "ledge" in light of the specification. WCT reasons that, under its construction of "support surface," the ledge is only in contact with the movable member when it is in the closed position. In light of the construction of "support surface" as the plane upon which the movable member opens and closes, it follows that the ledge is in contact with the movable member when it is in the closed position. This is because the ledge lies across the archwire slot from the support surface. This construction is further supported by the functionality of the ledge as described in the specification.

For these reasons, the court adopts WCT's construction of "ledge."

III.    Prosecution History

WCT also refers the court to the prosecution of the '896 Patent, arguing that it adds further credence to its proposed construction of "support surface." According to WCT, in its "Amendment After Final Rejection," Ormco submitted an additional claim which is now Claim 6 of the issued '896 Patent. (Smith-Hill Decl., Ex. B.) The amendment was for the purpose of clarifying the meaning of "planar projection" and reads: "The self-ligating orthodontic bracket of claim 1, wherein

the support surface intersects one of the opposing first and second slot surfaces to define an edge of the archwire slot and the support surface defines a translation plane that intersects the other of the opposing first and second slot surfaces." (*Id*. at 9.) In the "Remarks" section of the amendment, Ormco stated that the "support surface and translation plane are disclosed in at least paragraph [0031] and depicted in Fig. 3." (*Id*. at 12.)

According to WCT, paragraph 31 refers to this portion of the issued patent:

> In another advantageous aspect of the invention, the slide engagement track and the archwire slot generally have a non-orthogonal relationship. In particular, the base surface of the archwire generally defines a base plane and the slide engagement track generally defines a translation plane along which the ligating slide moves between the opened and closed positions. It should be recognized that base surface and slide engagement track need not be precisely planar but be configured such that base plane and translation plane may be generally defined. The base plane and translation plane are acutely angled with respect to each other by angle A, as shown in Fig. 3. In this way, as the ligating slide is moved from the closed position to the opened position along slide engagement track and parallel to translation plane, the ligating slide moves generally in the labial-gingival direction so that the edge of the ligating slide does not make contact with the gingiva adjacent orthodontic bracket when mounted to molar teeth.

('896 Patent 5:65-6:23.) WCT also notes that the sentences immediately prior to this paragraph refer to the support surface as defining the slide engagement track. As such, WCT argues that the inventor's use of "support surface" in the claim language is consistent with its use in the specification, "as the surface which defines both the translation plane and the slide engagement track." (Response at 14.)

Ormco responds that this argument is misplaced because it concerns the language of Claim 6, rather than the disputed language in Claim 1, and that the phrase "support surface" is never referenced in the prosecution history. At hearing, however, Ormco argued that the language of Claim 6 and principles of claim differentiation lend support to its construction of "support surface"

OPINION AND ORDER                 18

because WCT's construction would render the language of Claim 6 superfluous. In its visual presentation at hearing, it cited the *Phillips* court: "[T]he presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." 415 F.3d at 1315 (citing *Liebel-Flarsheim*, 358 F.3d at 910). WCT was unable present argument to refute Ormco's argument, as the argument was presented for the first time at the hearing on this motion.

     As a preliminary note, a presumption created under the doctrine of claim differentiation "will be overcome by a contrary construction dictated by the written description or prosecution history." *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005). Furthermore, the court does not agree that WCT's construction of support surface would render the language of Claim 6 superfluous. Claim 6 reads: "The self-ligating orthodontic bracket of claim 1, wherein the support surface intersects one of the opposing first and second slot surfaces to define an edge of the archwire slot and the support surface defines a translation plane that intersects the other of the opposing first and second slot surfaces." ('896 Patent 11:1-5.) This claim describes a specific configuration of the archwire slot, the support surface, and the translation plane as defined by the support surface. Claim 6 provides that one edge of the archwire slot is defined by the support surface, which extends along the translation plane to intersect with the opposing edge of the archwire slot. Ormco's conclusory representations that Claim 6 describes the preferred embodiment or is otherwise superfluous are insufficient to disturb the court's construction of "support surface." With respect to WCT's contention that the prosecution history supports its proposed construction, the court declines to rule on this issue in light of its adoption of this construction based on the claim language and the specification.

*Conclusion*

For the reasons stated, the court construes the claim language as follows. "Support surface" is construed as "a surface on the bracket body that defines a slide engagement track and therefore supports and guides the claimed movable member during movement between open and closed positions." "Ledge" is construed as "an area on the bracket body which contacts the claimed movable member only when the movable member is in the closed position."

IT IS SO ORDERED.

DATED this 21st day of October, 2013.

/s/ John V. Acosta
JOHN V. ACOSTA
United States Magistrate Judge